Thank you, Judge Watford. May it please the Court. My name is Stephen Riola. I'm with Covington & Burling, representing Appellant De'Marian Clemons. I'd like to reserve two minutes for rebuttal. As set forth in our opening brief, the District Court committed several legal errors in the proceedings below. I'm happy to answer questions about all of them, but given my limited time, I'd like to focus this Court's attention on two issues. The first is the dismissal of Burrison from this case for lack of service, and the second is the District Court's denial of Mr. Clemons' motion to request the appointment of counsel under 28 U.S.C. section 1915e. As set forth in our opening brief, the District Court erred when it dismissed Burrison from this case for lack of service because the United States Marshal's failure to serve process supplied good cause for Mr. Clemons' failure to serve her, thereby entitling him to an extension of the time to serve process under Federal Rule of Civil Procedure 4M. So maybe you can just jump in and help me with the thing that's hindering me to come out your way on this issue, which is that I guess we have that prior case, the name of course I'm blanking on. Boudette. Boudette, yes. Thank you. That interpreted an older, albeit an older version of the rule, but it said very clearly that you do have to make the request, right? And so your position, I gather, has to be that the amendment that occurred after Boudette was sufficiently clear that it intended to overrule that prior interpretation of the prior interpretation of the rule such that we can now disregard Boudette? Our position is that there are dozens of cases in this circuit, Your Honor, that discuss that an exception to the prior panel rule is that when Congress amends a statute, that's an intervening higher authority that requires this Court to consider its prior or re-evaluate its prior decisions in light of the amended text. Okay. But isn't it kind of like the same? Haven't we adopted the same standard that we did in Miller v. Gami for intervening court authority, where we have to say, okay, we have our prior decision in light of this new intervening authority. Are the two basically clearly irreconcilable? And I guess that's where I have some difficulty, because I look at the new — I look at the old rule, and the old rule is crystal clear that you had to make the request, right? I look at the new rule, and I don't know. I actually — I have no idea if the amended language was intended to discard the request requirement or if it was intended to basically just keep it intact. And so in that situation, it seems like I'm left saying, I guess they're not clearly irreconcilable. So we have two responses to that, Your Honor. The first is that we would submit that the change to the amended statute is quite significant. The prior version of the rule, which I have in front of me, conditions the marshal's obligation to serve process in three different categories of cases at the request of the party seeking service. But the amended version of the statute says that the court must order service in IFP cases, and the district court retains the discretion in other cases in order to effectuate service. Well, okay, let's look at the language, because the ambiguity, it seems to me, is that the first clause of the rule says, at the plaintiff's request, the court may, right? And then it says, the court must so order if the plaintiff and these other — I'm looking at the most — Yes, Your Honor. But so the must-so-order just suggests that, well, maybe it's in the set of cases, right, that's referred to in the preceding sentence, which is when the plaintiff makes the request. Isn't that the problem with the — the amended rule doesn't seem to clarify that. Well, again, Your Honor, I think — I think the prior version of the rule elicits — or lists out three different categories of cases in which, when somebody requests it, the process must be served, including IFP cases. The rule is then amended, and it kind of bifurcates that — that request inquiry. It says the district court retains the discretion to appoint service of process at the request of the party, but then the second sentence says, without referencing at all a request requirement, that the court must order service in IFP cases. The — the actual — the 1993 amendments discuss this in some detail, and they say the court remains obligated to appoint a marshal in two categories of cases, including IFP cases. The court also retains the discretion to appoint a process server on motion of the party. So, again, the amendments to the statute kind of indicate that the first sentence invokes the request requirement, but the second does not. Relatedly, Your Honor, this Court has an obligation to construe statutes consistently with each other when it is possible to do so. So did the — How do you deal with the advisory committee notes in 1993 which say that the amendment — the wording change was not meant to affect the duties of the court? So the advisory committee's notes, which we've looked at a little bit, again, it kind of indicate, to be honest, Your Honor, that there never was a request requirement in the statute. It says the court remains obligated to appoint a marshal or some other person to effectuate service of summons in two classes of cases, including IFP cases. So the — the advisory committee notes, if anything, kind of suggests that there never was a request requirement in the — But that's definitely not true, right? The old version of the statute definitely required a request. Well, the courts — the courts did hold that. My point, Your Honor, is just that Congress doesn't seem to have intended that — or that the prior version had a request requirement. It was trying to amend the rule. Well, I would have thought you would have answered that under our Ninth Circuit law with respect to IFP and pro se litigants, that the court had some kind of responsibility to tell him that he ought to ask for it. And so my question is, wasn't that satisfied here? Didn't the court ask him whether — whether he would — was willing to wait to serve? Well, again, like under — under the plaintext of the provisions, we would submit that — that Mr. Clements never had to make a motion, never had to make a request. And in — in just about any one of these cases, of course — of course, the plaintiff would request the service of process because financial limitations, trying to coordinate within a prison to go out and get a process server, all of that imposed significant hurdles. And the Federal rules, this Court's decisions in Rand talk about it, about interpreting the rules in a way that — that create procedural booby traps. And we would submit that, especially when the plain language of the provision provide that — that there is no request requirement, that would just be imposing a procedural booby trap on — on pro se litigants. I'd like to mention a little bit, before I move on to the next issue, the significance of the fact that this Court interpreted in Boudette 1915d to not require a request at all. Because Boudette remains good law on that point because the rule has not been amended. And, again, that puts us in the situation where Congress then deletes the language referencing a request in IFP cases, whereas before it provided a situation that said you need to make a request in these three categories of cases, it bifurcates it. Any — any ambiguity in that — in that situation goes in favor of resolving the two statutes as consistently with each other. And it is recognized in numerous cases that when Congress deletes limiting language that you can presume they intended the — the change in meaning. Moving on to the — the counsel issue, which I'd like to discuss a little bit briefly, I think it's important to emphasize the facts of this case. Mr. Clemens was on crutches. He was on a cane. The prison recognized that he had a serious medical condition as — as shown by the fact that they let him see an outside medical treatment provider. And shortly after getting into an argument with a caseworker in which he was protesting about his medical treatment, he was moved to a top bunk despite the fact that he had remained on a bottom bunk for two years. And according to the facts as alleged by Mr. Clemens in the complaint, two — two prison These were serious, viable allegations of retaliation as the district court concluded when it allowed his claim to proceed to trial against Hill and rejected the government's summary judgment arguments. But because Mr. Clemens didn't have a counsel, he proceeded to trial without having been able to obtain discovery. His sole witnesses were himself and his mother. And the sole exhibit that he marked for trial was the prisoner visitation log. Under Pruitt v. Mott, which we cited in our brief, the prejudice inquiry for motions to appoint counsel is whether the appointment of counsel reasonably could have helped the presentation and preparation of the case. And we certainly would submit that that is the case, that a counsel would have went and sought out those two employees who sought to oppose the bed — the bed move that the counsel would have sought out for their discovery, including depositions. And Mr. Clemens never should have — the district court never should have denied his — Mr. Williams. The — he — he filed the motion for counsel, Your Honor, right before summary judgment, and that was the first time it was denied. And then he got a trial with Hill and it was denied again. And we would submit at the summary judgment stage, when he still had all those other claims active, the district court should have — should have granted it, and that there were two errors that the district court made. The first is that under this Court's decision in Wilborn v. Escalderon, the test for appointment of counsels is — is for extraordinary circumstances, which is a two-prong inquiry. And Wilborn makes clear that both of those prongs must be considered before reaching a decision, likelihood of success, and the ability to articulate his claims in light of the complexity of the issues involved. The district court never considered the likelihood of success factor, but then if we consider those two prongs together, we certainly think the test was met. On — on likelihood of success, we cited several cases in our brief that discussed likelihood of success does not require success. It requires questions serious enough to require litigation. And we certainly would submit that the questions in this case were serious enough to require litigation, as the district court itself concluded when it allowed his claim against Hill to proceed to trial. As to the ability to articulate his claims in light of the complexities involved, there were several complexities in this case. There was an Erie issue that impacted his claim against Dr. Sanchez. There was his claim against Nurse Dressler involved a State law cause of action that incorporated its elements, Federal law. There was the medical affidavit requirement of his medical malpractice claim, which meant that Mr. Clemens needed to get an expert witness to testify to medical malpractice. And in open hearings before the district court, the district court actually asked the warden of the prison whether Mr. Clemens could contact an outside doctor without counsel or without a doctor or without a doctor willing to accept a collect call. And the warden swearly said that he would not have had the opportunity without a counsel and without somebody willing to take a collect call in order to go and secure that witness. The record was replete with numerous examples of Mr. Clemens struggling, and we think the best example of that is when Mr. Clemens tried to get Dr. Sanchez involved in medical malpractice. And in light of that, we would submit that the district court certainly knew that the complexity of the issues involved affected Mr. Clemens' ability to articulate his claims. And your argument on this point, I guess I had assumed that it went mainly to the claim against, was it Hill? Was that the person he went to trial against? I assume that you were basically seeking reversal of the adverse jury verdict on the ground that he didn't have counsel there, but that it didn't extend backward. I gather you're saying that it actually does. We think it would have been appropriate before the summary judgment stage, given the serious facts in this case, for the district court to have granted it, and that that prejudiced not only the presentation of the case, but also his ability to get discovery. He made the request before the summary judgment. Yes, Your Honor. Briefly before I sit down, I want to just talk about the Dressler, the claims against Dressler and Williams, both of which suffer from one error, which is that the district court improperly reversed the summary judgment standard by granting summary judgment on the grounds the district court never requested. Under Rule 56C and the Supreme Court's decision in Celotex, the government had the initial burden of showing that there was no genuine issue of fact for trial. And if it didn't meet that burden, Mr. Clemens was entitled to defeat the motion for summary judgment under this Court's decision in Nissan without producing  And not only was that an error, but we would submit that it's an error that can't be corrected on appeal. Because the government never moved for summary judgment on that basis, Mr. Clemens never had a reason to supplement the record, to come forward and cite to reasons why the warden was aware of the retaliation. And this Court has no idea what evidence Mr. Clemens could have offered in the record had he noticed that the government was moving for summary judgment on the basis they moved for. Under Davis v. Nordstrom and Singleton v. Wolf, this Court has discussed and the Supreme Court has discussed that the reason why this Court shouldn't address issues not addressed in the district court typically is that people aren't surprised on appeal by issues upon which they've not had the opportunity to introduce evidence. And we would submit that the record on those issues is not complete. If the government wants to move for summary judgment, they're welcome to do so. But Rule 56 entitles Mr. Clemens to the opportunity to cite to any evidence and to request to supplement the record if he feels the need to as to why there is a genuine issue of material fact before the claims are dismissed against him. I'd like to reserve the rest of my time for rebuttals. Thank you. Roberts. Thank you. Let's hear from counsel for the defendants. Good morning, Judge Roffert, members of the Court. I'm Randall Gilmer, and I'm here representing the defendants in this case, with the exception of Ms. Gerson. I was going to ask, are you not going to address the first issue? I would rather focus my time on my defendants, if that's okay with the Court. Obviously, it's an interesting academic exercise, but since she's not my client, I don't feel as if it's the case. Tell me again who you're talking about. Gerson, the service issue. I will inform the Court I believe that she lives in Bay Lise now. That's everything that she's informed us. So I'm sure U.S. Marshall might enjoy trying to serve her there, but I'm not sure that it would procedurally mean anything with regard to the Court. Where was she then? What's that? Where was Gerson at the time? I do not know. She has retired and moved to Bay Lise. That is my only knowledge of Ms. Gerson. She sent us a letter to indicate that she never wants us to represent her. She has no plans to ever return to the United States. So that's all I know about Ms. Gerson. I doubt that will factor in any way into our decision. Certainly. But thanks for mentioning that. So, okay, you're just going to address Williams, Hill. Williams, Hill, and Dressler. Dressler, okay. Thank you, Your Honor. What are you saying? Because she's not on this issue, it's moot? I'm not saying it's moot at all, Your Honor. I leave that entirely to the Court's discretion. I just know that I don't represent her, so I don't feel compelled or even ethically like ethical duty. Oh, you don't represent her. I do not represent her and never have represented her in this case. But, you know, this bothers me, because what I do when I get this from the City of New York and others back the other side of the country where the air is clear is I tell the city, this is your option. You claim he's retired. You go back to him and you tell him that if he doesn't authorize you to represent him, then I'm going to order you to give the plaintiff his address. That always works. And that goes to an issue, this issue of his ability to effectively represent himself, because he doesn't know how to, you know, he's not in a position to even say such a thing. I mean, I don't even wait. I just do this. I can't stand this baloney that they don't represent him and therefore goodbye. But that seems to me to also touch upon this issue of his ability to represent himself, which I think permeates almost the whole case. I think you had two different questions in there, Your Honor. I'll start with the first part. With regard to misperception, it is our general practice as officers of the Attorney General, first off, there's this Nevada statute that says we cannot represent anyone unless they ask for a request for representation.  I understand that. Under the general practice of the United States District Court in Nevada, whenever we do not represent someone or we will not accept service for the individual, we do provide their last known address under seal to the court so that they are aware of that information so that the court can then determine whether or not to seek service. Obviously, for safety and security concerns, they don't want the address to be known as to the correctional officers. They did that here. As far as I have, my understanding is that the last known address was provided to the court. Was it provided to the plaintiff? Again, that would never be done in my. Instead, the judge told them, I'll dismiss it without prejudice. Is that okay? I mean, maybe if you were represented by a lawyer, who knows. But is that okay? And the okay is the end of the discussion? When the judge is holding in his hand the address on which service could be made and otherwise the defendant, the plaintiff, could not make service? Well, again, I think you said a key word there was without prejudice. So clearly, Mr. Clemens could have sought to bring him back in or bring Ms. Burson back in. Well, he could have. If he could have, if he knew where she was, if he knew her address. Well, and again, my understanding is that Ms. Burson lives in Baileys and has a U.S. Postal Service. That's not in the record. Absolutely, Your Honor. You're right. That is not in the record. I'd like to move on to the appointment of counsel, if I could at this point, Your Honor, because as you said, you believe that permeates the whole discussion in this case. And I would like to first focus on with regard to, and I'm not conceding that counsel should have been provided here, and we'll get into that in a moment. But I would like to address whether or not there should be a new trial for Ms. Hill even if counsel were provided. And in that respect, I would like to point out that plaintiffs has not provided this court with a copy of the trial transcript with regard to what actually occurred at trial. So I think it is difficult, if it hasn't been waived, to determine whether or not counsel would have been necessary or helpful at trial when we do not know what occurred at trial. Is there a trial transcript? Is there a transcript? There was a jury trial. I would presume there was — there would certainly have been trial transcripts, but it hasn't been. It would normally be filed in the clerk's office. Okay. Well, it hasn't been — It would normally be available if there's a trial transcript that's always filed in the clerk's office. It hasn't been part of the record on appeal, and they didn't address anything with regard to what occurred at trial in their brief. So I would argue that with regard to the extent that — and when I look at the questions at issue before the Court, I don't necessarily even see where they ask for that. I see it referenced on one page in their brief. I believe it's at page 47 of their brief where they say, and because of this, the trial for Hill should be remanded. So I think that we are at an unfair advantage — or unfair disadvantage with regard to trying to decipher how counsel may have assisted Mr. Clemens at trial if he had been provided counsel. Let me ask you one more question about this. Maybe — I don't understand anything about how this whole ECF system works. It's beyond my — I'm too old for all of this. But as I understand it, at least where I work, when a notice of appeal is filed and there's an appeal, somebody presses a button in the district court, and the whole file goes up to the court of appeals. Does that make it part of the record? And is that what — isn't that what — isn't that precisely what may have happened here? I think that while the Court certainly has access to those transcripts, myself as a party does not have access to those transcripts unless I purchase them. And I don't believe that I should be required to purchase something that hasn't been part of the exhibit of record. It's plaintiff's obligation to provide that as part of the record so that I can review it, as they did with regard to the transcripts on the MSJ, as they did with regard to all the other transcripts. But they didn't provide anything with regard to the actual trial record. Well, typically the transcripts have to be ordered because they're not verbatim. They're the court reporter's shorthand notes that have to be transformed into a transcript. And unless the parties order that, it's normally not done. That's at least been my experience. Is it different in your district? Thank you, Your Honor. No, I believe that is absolutely true. And obviously — and our position as defendant, we won the trial, and he didn't — those transcripts weren't ordered by plaintiffs, so we were under the impression that the issues that were going to be before this Court was everything that happened prior to trial and not with regard to the trial. Plaintiffs probably didn't have the money to pay for it. Well, Your Honor, in that respect, he — I mean, we do have pro bono counsel that came on board, and I do not — and I appreciate that they did that. The firm has come on board to that. They had money to provide transcripts of the MSJ proceedings, the motion to dismiss proceedings, the proceeding with regard to motion to compel. All of those transcripts were provided. So I would think that if it was important for the plaintiffs to have another bite at the apple after the jury found against him with regard to Ms. Hill, that that would — that they were — it was incumbent upon them to provide a transcript so that those information could be provided. Roberts, what do you want us to know about what happened at the trial that suggests that counsel couldn't have made a difference? Because I guess my starting position is that if a judge looks at something at summary judgment and says this has enough merit to get to a jury, presumably there's something there. And in almost every case, I can't imagine that a lawyer wouldn't have made a difference. So is there something special to this case that you think shows that, no, you could have had the best lawyer in the world and the jury would have come out the same way? Well, yeah, I want you to know that we won at trial. But with regard to — Yeah, you — With regard to — That's why we're so good. Actually, it was my colleagues. I did not represent the trial. I was not there at trial. It was my colleagues. So it's very difficult for me to give you verbatim information, because I was not firsthand. And this is the same issue. It's not part of the record. So it's hard for me to know exactly what might have occurred. What I can say, though, is two things. Prior to the trial, when Judge Boulware did again dismiss or deny the right for counsel — and I would like to correct one thing — he asked for counsel at the time of the filing of the complaint, and it was also denied in the screening order. So it was at least denied at least twice in this case. But prior to trial, when they're having the pretrial transcript, and this was prior — this was part of the supplemental record that was attached as part of the reply brief, Judge Boulware indicated he didn't plan on providing counsel. He didn't think it was needed. He said that it was a fairly straightforward case, and he had adequately represented himself up until that time. That's found at page 5 of the supplemental record on appeal. And then — and I would argue that this possibly goes to a waiver and forfeiture issue, but again, of course, I realize that he's pro se. Judge Boulware says, it seems like there's an allegation about an assignment to a bunk and the reason for that assignment and what is at issue in this case in terms of retaliation. And that doesn't appear to me to be particularly complicated. He then goes on to ask, Mr. Clemens, is there any reason why you couldn't, with the amount of time, prepare for a trial on November 14th? Mr. Clemens, no, I can prepare for it. He didn't, again, object and say, no, I think I really need counsel. He said, I can prepare. I'm going to have plenty of time. He then goes on on the next page. What does he know about whether he needs counsel or not? This whole thing seems to me to be argued in an unreal world. I mean, you have a plaintiff who obviously needs counsel. I don't know how, in a case like this, the judge could make a determination that counsel would not be helpful to him or that he's capable of representing himself. I mean, it. Well, I appreciate that question, Judge Corman. I would just note, though, that if that's the position that you feel is present, then there would always be counsel appointed in these cases. There was nothing in the record that showed that Mr. Clemens was different than any other pro se. But the judge didn't ask him whether he needed counsel. He'd already asked for counsel. And the judge was asking him, can you be ready by this time? Well, he had previously indicated that Mr. Clemens had shown that he was able to articulate his position as well and could move forward. Going back to the supplemental excerpt on page 6, again, Mr. Clemens, no, I don't have anything else to do but to get on with it and start preparing for it. Clemens noted the Court was giving him sufficient time to file jury instructions and questions, and he responded to that at page 8. Yes, sir. I think another thing that's important here, there was a mistrial that happened on November 14th, not because of anything Mr. Clemens did, but because of an electrical issue that allowed an exhibit that had not been admitted to be shown to the jury, so the judge didn't think that could be cured. So he filed a mistrial. That was while our office was bringing forth evidence. So the trial was brought back in January. So from between November, we had this – there was another full two months where Mr. Clemens could have again sought for the request for counsel. There was never a third request for counsel. So I think those are all very important facts to consider with regard to the likelihood of success. I see that I have two minutes left, so I'd like to move on to a couple other points, if I could, briefly. I think that, moving on, we did address at – I believe it's in the record at 197 in the opposition to counsel why there was not a likelihood of success on the merits. So while the Court may have been a – may have not articulated that specific prong directly, it's clear that in the record we provided reason why we didn't think there was a likelihood of success. I would like to discuss the negligent supervision issue, if I could, briefly, and the elements of negligent supervision under Nevada law. Which – is this as to Dressler or Williams? I think it applies to both, Your Honor, actually. Okay. Because the – I was just going to provide you the overall standard. I'll address both of them at the moment. And the case that best addresses this, I believe, is Duchesne v. Acosta, which was an unpublished decision. The cite for that is 2015 Westlaw 9480185. While that is an unpublished court of appeals decision, it does cite to Nevada Supreme Court law and also quotes to the restatement second of agency, as well as the Vermont Supreme Court in the case of Haverly v. Katak. And it says, quote, these theories of liability only apply, however, and this is a quote from the restatement, if all the requirements of an action of tort for negligent exist, thus the torts of negligent hiring, supervision, or training must include as an element an underlying tort or wrongful act committed by the employee. Here we've gone through a trial, and the jury found in favor of Ms. Hill. The record is clear that there is no underlying issue. Mr. Clemens was seen by medical at least a total of 24 times over a one-year period of time, perhaps more than that. That averages out to about two times a month for a sprained ankle. There's no indication, and I see my time is out. May I finish my thought? Scalia, of course, yes. Thank you, Your Honor. There's no indication that at any of those medical appointments that he ever asked for a low bunk restriction. The only grievance on that point clearly said this is a medical question, ask for it, and you'll be given it. There's no indication that Williams has ever provided any kites, according to the record, they all went to medical with the exception of one that went to A.W. Gentry. Sorry. Could you repeat what you just said? I didn't hear it. There's no indication in the record that any of the kites ever went to Mr. Warden Williams. They all went to medical with the exception of one that went to A.W. Gentry, and that was responded to very quickly. Well, can I give you the summary that my law clerk prepared? I give him credit for this. The plaintiff filed an informal grievance regarding the bunk. After the informal grievance was rejected by Burson, the plaintiff refiled the first level grievance on October 8th. That grievance regarding his bunk assignment was assigned to B. Williams for review in accordance with the N. D. O.C. regulations requiring the warden's review of first level grievances. Similarly, the verified complaint states that plaintiff, quote, spoke with the defendant, Williams, about getting the appropriate brace for my leg and several other medical things that I need for my injury, but he will not talk to me or respond to any of my communiques because of the ongoing civil complaint. And that's all in the record. I can give you the record cites if you want. No, no, Your Honor. I appreciate that, and I don't need the record cites. So it seems to me that Williams had knowledge, and the district court engages in what seems to me somewhat of an unusual colloquy and says to him, how do you know that Williams had knowledge? I mean, how is he supposed to know? He, the record, which is, these are all admissible in evidence in a summary judgment motion, he provided it. Yes, Your Honor. Two points. Thank you very much. The first point is that, again, at one of the hearings, and this is, I believe this was in the motion for summary judgment, Judge Bulwer asks plaintiff directly, is there any grievance that you sent to Warden Williams that was returned to you? Answer, no, I did not file a grievance. The grievance that your clerk is referencing there can be found on ER-365 that says there was a sign to be Williams. However, if we look at ER-366, it appears as if the answer was actually done by Williams, that it's handwritten in her handwriting, signed by her, and Mr. Clements signed it. And it is the same exact answer that is in the computer-generated term. But let's assume, because this is a summary judgment standard that Mr. Williams knew, let's look at the language of that. Well, he also alleged it in the verified complaint. Certainly. Which is certainly appropriate for consideration on opposition to a motion for summary judgment. Certainly. But again, I would point out that it appears as if he reversed himself in answer to a question at the motion for summary judgment hearing, which can be found at ER-26. But let's assume for purposes that Warden Williams did receive that grievance. It says, you have received an accurate response at the informal level. If you feel you have medical issues, it is your responsibility to contact medical. No bunks at SDC have steps. Assuming Warden Williams answered it, that was the response. And in those 24 medical appointments that he had, there's no record anywhere that he ever asked medical for a bunk. And I see I'm way over. Would you like me to continue to answer or sit down? Do you have more to do? Take another minute. Thank you. Take another minute. Because that references the informal grievance, I'd like to point out that the response at the informal grievance says, bottom bunks are reserved for inmates with a documented medical need. Obtain the documentation and it won't be an issue. So, Mr. Clements was told exactly what he needed to do, ask for the documentations from medical. And finally, in the second level grievance, which was decided after either Warden Williams or Burson responded at the first level and said medical, the second level grievance says, SDC medical has reviewed your medical claims within this grievance and has confirmed that you do not require a low bunk restriction. How is someone who's on crutches supposed to get up to the upper bunk? He had been moved to a cane at one point during this process. I spent several months on crutches. And I'm telling you, I don't know how I would get up. As have I. And I've had to climb stairs. And I, again, talking stories, I worked at a summer camp and was on the top bunk and it hurt my ankle. So I can appreciate that difficulty. But there's still a procedure. And medical said that they reviewed it. And at that point in time, he didn't need it. Now, I note that this was also November of 2012. So that was after he was already on the cane at that point. So it was long past the time when he was on crutches that they moved to the top bunk. In your vision, how would, if you need a cane, how you could lift yourself up to an upper bunk? Mr. Clemens indicates that he had a makeshift steps in his cell that he had that allowed him to get up to his bunk. And, again, Judge, it's a very good question. I'm not trying to believe. But we don't see any emergency grievances. I can't get in my bunk. I can't get in my bunk. There's no indication that he wasn't able to get in his bunk, even though we can hypothesize as to how he did that. We don't see in the record. I mean, Mr. Clemens was clearly aware of how to file kites. He did. And we don't see any kites or any further emergency grievances that says, look, I can't get in my bunk. I can't get in my bunk. So I think that has to be reviewed as well. Thank you, counsel. Appreciate the argument. Thank you, and I appreciate the extra time. Absolutely. Let's give two minutes to counsel for a plan. Thank you, Your Honor. I'm going to raise a couple issues. The first is just going back a little bit to the text of the rule. Three circuits have agreed with us that the plain text of the amended version of Rule 4C. But none of them had a boudette on the books, right? No. They did not. But they also expressly said the Tenth Circuit, I think, explicitly referenced the boudette decision and said the language of the Ninth Circuit relied on. Obviously, this Court has to evaluate that itself. But I just wanted to point out that three circuits have agreed with our interpretation of the issue. On the transcripts, we did purchase the transcripts, and we shared them with the government. So Mr. Rowe had the full transcripts. We purchased them at our expense. The reason we didn't put them in the record is we're not challenging that we're not saying that no reasonable jury would not have found in her favor. We're saying that the assistance of counsel would have strengthened the case. What we do have in the record on ER 145 and ER 146 is that his sole witnesses were himself and his mother, and that the sole exhibit he had was a prisoner visitation log. And I think that stands on itself to kind of think of the many ways in which counsel could have affected the presentation of counsel, which is the relevant prejudice inquiry for the appointment of counsel. The government acknowledged that the district court never mentioned the likelihood of success factor, and as we set forward in our brief, it's an unprecedential opinion in the circuit, but Wright v. Department of Corrections calls out the fact that the district court never discussed the likelihood of success factor and that that was an error that required reversal, that it stated the correct standard but never applied it, and that underscores a second problem with this issue beyond the merits of the issue. I think on the merits of the issue, I just wanted to briefly just mention that there is a grievance that is directly assigned to the warden, and Mr. Clements had a couple of complaints bounce back because you have to attach an informal grievance to the formal grievance. In the formal grievance that went before the warden and was assigned to B. Williams, there are direct complaints to B. Williams. And prison regulations, even though Burrson signed it, say that grievances must be reviewed, investigated, and responded to by the warden. They say that the warden can allow somebody else to help him formulate a response, but that they have to be reviewed by him. And all reasonable inferences had to have been drawn in Mr. Clements's favor, and we would submit, at least on that particular issue, the district court didn't draw the reasonable inferences in his favor. Thank you. Thank you, counsel. And Mr. Aiola, let me extend to you the same thanks that I did to prior counsel. We're very grateful that you and your firm were willing. Again, I assume you took it on a referral from our court on a pro bono basis? Yes. Thank you very much for doing that. The case just argued is submitted.
judges: Schroeder, Watford, Korman